GILBERT et al. v. WARREN et al.

(Supreme Court, Appellate Division, First Department. December 31, 1900.)

1. USURY—LOAN OF SECURITIES—RIGHT TO COMPENSATION.

C. and defendants had been doing business as partners under the name of C. & Co., and C. retired, and agreed that defendants could continue to use his name, and that money standing to his credit should be a loan account, and draw interest at 6 per cent., and that, if C. lent the firm securities to be hypothecated for loans, no charge should be made for their use, and that defendants, instead of using C.'s securities, might call on him to increase his loan account to $50,000, which should draw interest, and in consideration of such agreement C. should receive $4,000 per year compensation. In an action on an account stated defendants claimed that C.'s loans were usurious. *Held*, that it was proper to instruct the jury that a party might properly receive compensation for a loan of securities, since the fact that C. was to make no charges for the use of the securities raised no presumption that the $4,000 was in part compensation for the loans.

2. LOAN OF NAME AND CREDIT — BONA FIDE AGREEMENT — COMPENSATION GREATER THAN LEGAL RATE—VALIDITY.

Where an agreement to pay a certain sum for the use of one's credit was bona fide, and not a cover for usury, the fact that the compensation for the use of such credit was more than the legal rate of interest on the probable amount of the liability to be incurred did not make the transaction usurious.

3. EVIDENCE OF USURY—SUFFICIENCY.

C. and defendants had been doing business as partners under the name of C. & Co., and in 1883 C. retired, and agreed that defendants could continue to use his name, and that money standing to his credit should be a loan account, and draw interest; that defendants might call on him to increase such loan account to $50,000, or hypothecate C.'s securities for loans without charge, and that C. should receive $4,000 per year compensation. In 1889 the firm dissolved, of which due publication was made, but C.'s name was still continued at the head of the firm. *Held*, that C.'s withdrawal and the publication of dissolution, and the fact that C. continued to receive $4,000 compensation after dissolution, were not sufficient to show that the transaction was usurious, since, in the absence of evidence that customers with whom the firm had been dealing had actual notice of the dissolution, C. was still liable for the firm debts, and it could not be said that he did not loan his credit after 1889.

Appeal from trial term, New York county.

Action by Alexander Gilbert and another, as executors of the estate of W. R. Clarkson, against Charles J. Warren and another. From a judgment in favor of plaintiffs, and from an order denying a new trial, defendants appeal. Affirmed.

Argued before PATTERSON, HATCH, RUMSEY, and INGRAHAM, JJ.

Lyman E. Warren, for appellants.
John E. Parsons, for respondents.

RUMSEY, J. The action was brought upon an account stated, and practically admitted by the defendants. The defense, among other things, was that on the 1st day of January, 1883, Clarkson, plaintiffs' testator, made an agreement with the defendants to loan them $50,000, and in consideration thereof they agreed to pay him, in addition to the regular rate of interest, the sum of $4,000 a year, making interest for the amount of the loan at the rate of 14 per cent.

per annum; and that the amounts mentioned in the complaint and appearing to the credit of Mr. Clarkson on the defendants' books were moneys loaned under this corrupt and usurious agreement, or were amounts credited to Clarkson by the defendants upon account of usurious interest. Upon the trial it appeared that for some time before the 1st of January, 1883, Clarkson, Warren, and Stratton had been partners in business under the firm name of W. R. Clarkson & Co.; that on that day Clarkson retired from the firm, but that it was agreed that the name of W. R. Clarkson should continue to be used in the business, and that the money standing to the credit of Clarkson was a loan account, and should draw interest at 6 per cent.; that, if Clarkson lent the firm securities to be hypothecated for loans, no charge should be made for the use of them; that the firm should pay the loans and interest, and return the securities to Clarkson; and that, in place of borrowing money on Clarkson's securities, Stratton and Warren might call on Clarkson to make his loan account $50,000, and draw interest as above. Then follow these words: "In consideration of above agreement, W. R. Clarkson shall receive four thousand dollars per year as compensation." It was claimed by the defendants that it was understood that this sum of $4,000 was to be paid to Clarkson as additional interest for the amount of loans which from time to time he should make to the firm. On the contrary, the plaintiffs claimed that this payment of $4,000 was made to him for the use of his credit, and as compensation for the loan of securities. The case has been presented to this court twice before. On the first trial, at the close of the defendants' case, after the agreement had been proved, and the fact of payments made under it had been established, the court ordered a verdict for the plaintiffs, holding that, as a matter of law, that agreement was not usurious. Upon appeal to this court that judgment was reversed, and a new trial was ordered. At the retrial the verdict was again ordered for the plaintiffs after evidence of the agreement and of the action taken under it had been given by the defendants, and evidence in rebuttal by the plaintiffs. At the close of the evidence the court ordered a verdict for the plaintiffs. Upon appeal from the judgment entered after that trial, this court again reversed, holding that upon all the evidence the question should have been presented to the jury whether the compensation which Clarkson was to receive was intended solely as a bonus for the loan of money or as a compensation for the continued use of his name in the business. Gilbert v. Warren, 44 App. Div. 631, 60 N. Y. Supp. 456. The case as now presented upon the evidence is substantially the same as it was upon the last appeal, and therefore, following the decision of this court, it was properly submitted to the jury. The only question which it is necessary now to discuss is whether the court has committed some error in its charge, or in rulings upon the admission or exclusion of evidence; and, if nothing of that kind has been established, the judgment and order must be affirmed.

We have examined the various exceptions taken by the defendants during the trial, and we find no error in any of them. There are but two which we deem it necessary to discuss. The court

charged the jury that a party might properly receive compensation for a loan of securities. There can be no doubt of the correctness of that proposition. It might be said, however, that it was not material in this case; and, if it was not material, clearly it was of no importance. But, if it was material, not only was it correct as an abstract legal proposition, but it was correct as applied to this case. It is quite true that by the terms of the agreement it was said that, if Clarkson should lend the securities to be hypothecated for loans, no charge should be made for the use of them. But the fact that Clarkson was to make no charge for lending securities affords no ground for the presumption that, if he did lend them, the $4,000 was to be in part compensation for the loan. The claim of the plaintiff that an agreement to lend one's credit is usurious if there was paid for it more than the legal rate of interest upon the probable amount of the liability to be incurred cannot be sustained in view of what is now the well-settled law of this state. Ketchum v. Barber, 4 Hill, 224; Dry-Dock Bank v. American Life Ins. & Trust Co., 3 N. Y. 344. It is not intended to say that, if the assumed loan of credit is in fact a device to cover an agreement to pay more than the legal rate of interest for the loan or forbearance of money, such contract is not usurious; but, as it is held in the cases cited above, and by necessary inference in this case when it was last before the court, unless such an agreement to pay for the loan of credit is intended as a device to cover usury, it is valid, and will be sustained. It is claimed here that upon the evidence there can be no doubt that the payment made to Clarkson, under the agreement to pay $4,000 a year as compensation, was usurious, because his liability as a partner ended upon the dissolution of the firm on the 10th of April, 1889, and payments under the $4,000 clause were made after that date, and down to shortly before his death. Therefore it is said, as there was no loan of credit after the 10th of April, 1889, these payments could not have been made for any such reason after that time, and by necessary inference they were not made for any such purpose before that time. There can be no doubt that from the 1st of January, 1883, down to the 10th of April, 1889, Clarkson's credit was very largely pledged for the liabilities of this firm. It appears that purchases to a very large amount, indeed, were made upon the credit of the firm, for which Clarkson remained apparently liable. As he had been a member of the firm, and as his name continued at the head of the firm, and the business was conducted from the 1st of January, 1883, down to the 10th of April, 1889, in precisely the same manner as it had been conducted before, there can be no doubt of his liability during that time. It is quite true that there was a dissolution of the firm on the 10th of April, 1889, and that notice of such dissolution was published in a newspaper. But that dissolution had no effect upon Clarkson's liability for debts which had been incurred before. As to them he was still liable. There was no proof that notice of this dissolution was sent to any of the persons with whom the firm had had credits before the date when the dissolution took place; and, in the absence of that proof,

Mr. Clarkson would continue liable to those persons for new pur-
chases, although there was in fact a dissolution of the firm, unless
it appeared that actual notice had been given to each one of those
persons. Contracting Co. v. Scribner, 52 App. Div. 505, 65 N. Y.
Supp. 444; Rolling-Mill Co. v. Harris, 124 N. Y. 280, 26 N. E. 541.
As we know nothing about the condition of these liabilities after
the 10th of April, 1889, and nothing about the extent of the deal-
ings with old creditors of the firm who had no notice of any change
in the status, we are not able to say that Mr. Clarkson's liability
for debts of the firm did not continue until the time of his death.
But with regard to that point it is to be observed that the ques-
tion is, what was the meaning of this contract, and for what pur-
pose was this $4,000 a year intended to be paid on the 1st of Jan-
uary, 1883? If, upon all the evidence, the jury were satisfied that,
when the agreement was made, the $4,000 a year was intended to
be a compensation for the loan of Clarkson's name in the business,
and thus of his credit, it was not usurious, although the payments
may have continued after the dissolution of the firm; and the
fact that these payments continued after the dissolution of the
firm, and after there ceased to be any apparent necessity to call
upon Clarkson for the loan of his credit, is to be taken simply as
evidence bearing upon the reason for which they were paid, and
not necessarily conclusive against the construction that the agree-
ment was valid.

These considerations lead us to the conclusion that upon the
whole case no error has been shown, and the judgment and order
must be affirmed, with costs. All concur.